# UNITED STATES DISTRICT COURT

### for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
         )    Case No.
A Samsung Cellular Phone Model SM-G960UZKATMK )
(Galaxy S9), )
IMEI number 355027/09/032495/9 )

FILED

APR 1 5 2019

**19 MJ 9156**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the    **Southern**    District of    **California**   , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☐ contraband, fruits of crime, or other items illegally possessed;

   ☐ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Unlawful Importation of Methamphetamine |

The application is based on these facts:
See attached Affidavit.

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
      under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Miguel Gallaga, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   4/15/19

_____
*Judge's signature*

City and state:   El Centro, CA       Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
                                            *Printed name and title*

1

2

## **<u>ATTACHMENT A</u>**

3

## PROPERTY TO BE SEARCHED

4

The following property is to be searched:

5

6           One (1) Black Samsung Cellphone
            Model: SM-G960UZKATMK (Galaxy S9)

7           IMEI: 355027/09/032495/9
            S/N: R58KA6J1R6Y

8

9   The **Target Telephone** is currently stored at HSI evidence locker 2051 North Waterman

10  Avenue, Suite 100, El Centro, CA 92243.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the device will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of December 17, 2018 to March 17, 2019:

a.  tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.



## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Miguel Gallaga, Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents and Task Force Officers of the Department of Homeland Security, Homeland Security Investigations, for the following property:

> One (1) Black Samsung Cellphone
> Model: SM-G960UZKATMK (Galaxy S9)
> IMEI: 355027/09/032495/9
> S/N: R58KA6J1R6Y
> (**Target Telephone**)

for evidence of violations of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substance (the Target Offense).

2.      On March 17, 2019, Customs and Border Protection Officers (CBPOs) seized the **Target Telephone** from Kevin MARTINEZ Tovar, at the Calexico, California East Port of Entry Port, in the Southern District of California. After MARTINEZ applied for entry into the United States, the gas tank of the vehicle MARTINEZ was driving was found to contain 37.52 kilograms (82.71 pounds) of methamphetamine. The **Target Telephone** is currently stored as evidence at the Homeland Security Investigations (HSI) evidence locker at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

3.      This search of the **Target Telephone** supports an investigation and prosecution of MARTINEZ for the Target Offense. Based on the information below, there is probable cause to believe that a search of the **Target Telephone**, as described in Attachment A, will produce evidence of the Target Offense, as described in Attachment B.

4.      The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offense. The evidence and information contained herein

1  was developed from my review of documents and other evidence related to this case.
2  Because I make this affidavit for the limited purpose of obtaining a search warrant for the
3  **Target Telephone**, it does not contain all of the information known by me or other federal
4  agents regarding this investigation, but only sets forth those facts believed to be necessary
5  to establish probable cause. Dates and times are approximate, and refer to Pacific Standard
6  Time unless otherwise specified.

7  ### EXPERIENCE AND TRAINING

8      5.      I am a Border Patrol Agent – Intelligence ("BPA-I") with the Department of
9  Homeland Security, Customs and Border Protection, United States Border Patrol
10 ("USBP"). I have been employed as a full-time, sworn federal agent with the USBP since
11 September 4, 2006, and graduated from the Federal Law Enforcement Training Center
12 (FLETC) located in Artesia, New Mexico. As part of this training, I attended criminal
13 investigation training that included course studies in, among other things, criminal law,
14 constitutional law, search and seizures, and courtroom procedure. As a BPA-I, I am a
15 Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules
16 of Criminal Procedure, which is, a government agent engaged in the enforcement of
17 criminal laws of the United States, and thereby authorized to request issuance of federal
18 and state search and seizure warrants. My responsibilities include the investigations of
19 possible violations of Titles 8, 18 and 21, and Firearms, United States Border Patrol,
20 Customs and Border Protection.

21     6.      I am currently assigned to the HSI ASAC, Calexico, California, Imperial
22 Valley Border Enforcement Security Task Force (IV BEST). As a Task Force Officer
23 (TFO) with IV-BEST, my primary duties involve the investigation of narcotics-related
24 violations of Title 21 of the United States Code and the California Health and Safety Code.
25 IV-BEST is tasked with investigating illegal narcotics trafficking organizations operating
26 in, around, and through Imperial County, California. I have participated in and conducted
27 investigations of violations of various State and Federal criminal laws, including unlawful
28 possession with intent to distribute controlled substances, distribution of controlled

2

substances, use of a communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code and various California Health and Safety Code  and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in various parts of the world, including Mexico.

7.     Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

8.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have learned that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, smart watches, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voice-mail messages referring to the

3

arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on where and when to deliver the controlled substances.

9.     Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.     Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.     Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.     Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.     Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.     Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g.     The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

10.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data

4

includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone and/or smart watch would likely be stored on any SIM Card that has been utilized in connection with that device.

11.     Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned that searches of cellular/mobile telephones, and SIM cards, associated with narcotics trafficking yields evidence:

a.      tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d.      tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e.      tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

5

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.      On March 16, 2019, Customs and Border Protection Officer (CBPO) E. Sabori was assigned to vehicle primary inspections, lane #5, at the Calexico, California East Port of Entry.

13.      At approximately 7:00 p.m., a silver Ford F-150 (Ford) arrived at primary inspection lane #5 and applied for entry. CBPO Sabori questioned the driver, a United States Citizen, Kevin MARTINEZ Tovar, if he had anything to declare.

14.      MARTINEZ stated he had nothing to declare. MARTINEZ also stated he was headed home to Yuma, Arizona.

15.      CBPO Sabori proceeded to inspect the Ford by tapping on the gas tank. CBPO Sabori noticed it made a solid sound. CBPO Sabori referred the Ford to the vehicle secondary lot for further inspection.

16.      At secondary inspection, CBPO A. Meza, who was assigned to operate the Z-Portal X-ray machine, instructed MARTINEZ to drive the Ford through the Z-Portal. CBPO Meza noticed anomalies in the gas tank. The Ford was screened by a Human/Narcotics Detector Dog (HNDD). The HNDD positively alerted to the gas tank area of the Ford.

17.      Further inspection of the vehicle revealed 73 cellophane wrapped packages concealed within the gas tank. The packages occupied approximately 80% of the total volume of the gas tank. The content of the package tested positive for the properties of methamphetamine.

18.      On March 17, 2019, at approximately 12:47 a.m., MARTINEZ was placed under arrest. The total weight was approximately 37.52 kilograms (82.71 pounds) of methamphetamine.

19.   A CBP Officer found the **Target Telephone** on the Ford's front passenger seat and seized it incident to MARTINEZ's arrest. I noticed that the **Target Telephone** continued to receive transmissions on March 17, 2019, during and immediately after MARTINEZ's arrest.

20.   Based upon my experience and investigation in this case, I believe MARTINEZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other federally controlled substance and to distribute it within the United States. Based on my experience investigating narcotics smugglers, I also believe MARTINEZ used the **Target Telephone** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I have learned that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information may be stored in the memory of a cellular telephone which identifies other persons involved in narcotics trafficking activities.

21.   Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Telephone** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of MARTINEZ and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment

1   dates, email messages, messages and posts from social networking sites like Facebook,
2   pictures and other digital information are stored in the memory of the **Target Telephone**.
3       22.     Finally, I am aware that drug conspiracies require detailed and intricate
4   planning to successfully evade detection by law enforcement. In my professional training
5   and experience, this may require planning and coordination in the days and weeks prior to
6   the event. Additionally, co-conspirators are often unaware of the subject's arrest and will
7   continue to attempt to communicate with the subject after the arrest to determine the
8   whereabouts of their valuable cargo. Given this, I request permission to search the **Target**
9   **Telephone** for items listed in Attachment B beginning on December 17, 2018 up to and
10  including March 17, 2019.

11  ## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

12      23.     It is not possible to determine, merely by knowing the cellular telephone's
13  make, model and serial number, the nature and types of services to which the device is
14  subscribed, and the nature of the data stored on the device. Cellular devices can be simple
15  cellular telephone and text message devices, can include cameras, can serve as personal
16  digital assistants and have functions such as calendars and full address books and can be
17  mini-computers allowing for electronic mail services, web services and rudimentary word
18  processing. An increasing number of cellular service providers now allow for their
19  subscribers to access their device over the internet and remotely destroy all of the data
20  contained on the device. For that reason, the device may only be powered in a secure
21  environment or, if possible, started in "flight mode" which disables access to the network.
22  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
23  equivalents and store information in volatile memory within the device or in memory cards
24  inserted into the device. Current technology provides some solutions for acquiring some of
25  the data stored in some cellular telephone models using forensic hardware and software.
26  Even if some of the stored information on the device may be acquired forensically, not all
27  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
28  data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that MARTINEZ used the **Target Telephone** to facilitate the offense of importation of a controlled substance. The **Target Telephone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

27.     Because the **Target Telephone** was promptly seized during the investigation of MARTINEZ' drug trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activity committed by MARTINEZ continues to exist on the **Target Telephone**.

28.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Task Force Officer with Homeland Security Investigations, or another

1 | federal law enforcement agent specially trained in digital evidence recovery, to search the
2 | items described in Attachment A, and seize the items listed in Attachment B.

3

4    I swear the foregoing is true and correct to the best of my knowledge and belief.

5

6                              Miguel Gallaga
7                              Task Force Officer, HSI

8

9 Subscribed and sworn to before me this _15th_ day of April, 2019.

10

11

12 HON. RUTH BERMUDEZ MONTENEGRO
   U.S. MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28